UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL POPESCU,<br><br>  Plaintiff,<br><br>  vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>  Defendants. | CASE NO. 13-CV-564-BEN (JLB)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>[Docket Nos. 24, 25, & 31] |

Now before the Court are motions filed by all defendants to dismiss the First Amended Complaint. The federal claims are barred by the statute of limitations. Because the federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. Therefore, for the reasons stated below, the case is dismissed.

**BACKGROUND**

Plaintiff Virgil Popescu, a California parolee, has filed a civil rights lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights. Plaintiff also alleges supplemental state-law claims pursuant to 42 U.S.C. § 1367(a). In particular, he alleges claims of intentional infliction of emotional distress, negligent infliction of emotional distress, "failure to properly train," and "failure to supervise and discipline." The First Amended Complaint ("FAC") was filed on January 27, 2014. For purposes of computing

statutes of limitations, the FAC relates back to the date the original Complaint was filed on March 11, 2013.

Popescu states that he was convicted of California stalking and weapons charges in 2006.[1] (FAC ¶ 12.) He asserts that, following his prison term, he was due for parole on October 8, 2009, but he was not allowed to parole to San Diego (at the request of a stalking victim). (*Id.* ¶ 14.) He further asserts that Parole Agent T.J. Ayala imposed ten other conditions which were "outrageous, illegal and unconstitutional, and not related to the offense." (*Id.*) Plaintiff claims that since his conviction for stalking fell under California Penal Code section 649, he should not have been prevented from paroling to San Diego County. (*Id.* ¶ 24.) He then asserts that after a parole supervisor refused to modify the conditions, he refused to comply with the conditions and he was sentenced to six more months in prison. (*Id.*) Based on his belief that he was wrongfully required to parole to Indio, California, Popescu alleges that he returned to San Diego on two separate occasions to seek assistance from the courts. He was arrested each time. (*Id.* ¶¶ 37, 46.)

In January 2010, while Plaintiff was in prison for his parole violation at the California Rehabilitation Center in Norco, the California Court of Appeal reversed the stalking conviction. The state firearms conviction was affirmed. (*Id.* ¶ 17.) He asked parole officials to release him from custody, because, he alleges, "he was in prison at the time, for refusing to sign the conditions related to STALKING." (*Id.* ¶ 18.) Popescu claims that because the stalking conviction was kept on the records he was still ordered to be paroled to Indio, which he refused to do. (*Id.* ¶ 19.) Popescu alleges that the failure of the parole officials to realize that his stalking conviction had been overturned was directly responsible for 18 months of additional

---

[1] The following statement of facts is drawn from Plaintiff's FAC. Although this Court has carefully reviewed the FAC, the background section is intended as a summary of relevant information, and does not recite all of the details of Plaintiff's claims.

incarceration. (*Id.* ¶¶ 19-20.) He claims he was incarcerated seven times[2] on the "NON-EXISTING offense of STALKING." (*Id.* ¶ 19). He further asserts that he wrote letters to various parole officials requesting to be released based on the appellate decision, but received no response. (*Id.* ¶ 30.) Plaintiff also alleges that the inactions of the parole agents caused severe mental stress and required him to take medication to stay alive. (*E.g.*, *id.* ¶¶ 26-27, 31, 35, 42, 50.)

Popescu also alleges that excessive force was used to arrest him on multiple occasions. (*E.g.*, *id.* ¶¶ 33, 41, 46, 48.) During these incidents, he claims that officers assaulted him, placed handcuffs on him too tightly, and dislocated his shoulder. (*Id.*) In addition, he claims that the officers insulted and threatened him. (*Id.* ¶¶ 33, 41.) Finally, he alleges that when he requested his medications to counteract an imminent heart attack, the officer refused. (*Id.* ¶¶ 33, 41.) Popescu does not allege that he suffered a heart attack as a result of these events. (*See id.* ¶¶ 33-35, 41-44.) However, he claims to have suffered numbness in his extremities, severe chest pains, and extreme mental and emotional distress. (*Id.* ¶¶ 33, 41.) During one of the arrests, Popescu alleges that the arresting officer was unable to restrain him with traditional handcuffs and wrapped a chain around his waist to secure him. (*Id.* ¶ 41.)

After one of the arrests, Plaintiff alleges that Parole Agent Hurtado took his keys and searched his apartment. (*Id.* ¶¶ 46-47.) He further alleges that Agent Hurtado stole some of his personal items while conducting the search, although he does not indicate what those items were. Plaintiff alleges that he was held for nine hours in "a very cold tank" wearing only his boxers. Afterwards, he was moved to a place called the "Light House", where he was forced to participate in "rehabilitation programs with drug addicts and alcoholics." Plaintiff was then moved to the Indio Rescue Mission where he received food, clothing, and shelter in the evening, while

---

[2] While Plaintiff alleges that he was incarcerated seven times, his Complaint describes six occasions.

- 3 - 13cv564

describing the time as "three days of pain and suffering" where he "expected to die."

In short, all of these claims arise from the period between his conviction for stalking and imposition of parole conditions in 2009, and the time when the conviction was eventually reversed, recognized in the superior court, and the parole conditions formally removed in 2011.

Popescu now asserts several claims for relief against the State of California Department of Corrections and Rehabilitation and 13 individual defendants: James Davis, Chairman of the Parole Board, Benny Davides, Parole Administrator, Bonita Stewart, Assistant Administrator, T.K. Ayala, Parole Agent, Louie Saldana, Parole Agent, Michael Ortiz, Parole Agent, Edward Galindo, Parole Agent, Sandra Walker, Parole Supervisor, Steve Smith, Parole Supervisor, Kenneth Ford, Parole Administrator, Frank Hurtado, Parole Agent, William Gore, San Diego County Sheriff, and C. Desalme, Deputy Sheriff, San Diego County. Federal claims for relief are brought principally under 42 U.S.C. §1983.

## I.   STANDARD FOR A MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer possibility that a defendant has acted unlawfully"). Under this standard, dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556. A claim may be dismissed pursuant to Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

The Ninth Circuit requires trial courts to "construe *pro se* filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (footnote omitted). "While the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) (internal quotations marks omitted)).

For any plaintiff to sustain an action under 42 U.S.C. § 1983, it must be shown: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right. *Rinker v. Napa County,* 831 F.2d 829, 831 (9th Cir. 1987) (citing *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-34 (9th Cir. 1984).

## II. STATUTE OF LIMITATIONS

There is no specified statute of limitations under 42 U.S.C. § 1983, so federal courts look to the law of the state in which the claim arose and apply that state's statute of limitations from an analogous cause of action. *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Since Popescu's claims arise out of conduct in California, the correct place to look is California's statute of limitations for personal injury actions, which the Ninth Circuit has held applies in §1983 cases. That period is two years. CAL. CODE CIV. PROC. § 335.1; *see Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004).

While state law determines the applicable statute of limitations, federal law determines when a §1983 claim accrues. *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). Accrual is the date on which the statute of limitations begins to run. Under federal law, the limitations period for a

cause of action accrues when a plaintiff "knows or has reason to know of the injury that is the basis of the cause of action." *Pouncil*, 704 F.3d at 574 (quoting *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996) (internal quotation marks omitted)).

State law determines the application of tolling doctrines. *See Hardin v. Straub*, 490 U.S. 536, 543-44 (1989). California law provides for the tolling of its statute of limitations. If a plaintiff is incarcerated at the time his claim accrues, the incarceration will toll the period for up to two years. CAL. CODE CIV. PROC. § 352.1(a). For a California litigant, however, tolling is not available "unless it *existed* when his right of action accrued." CAL. CODE CIV. PROC. § 357 (emphasis added); *see also Cooper v. Franchise Tax Bd., State of Cal.*, 661 F. Supp. 60, 61 (N.D. Cal. 1987) (holding that tolling was not available because the plaintiff was not imprisoned on the date the claims accrued). This is significant for Popescu's claims, as discussed below. The Ninth Circuit has emphasized that "actual, uninterrupted incarceration is the touchstone for determining disability by incarceration." *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004) (quoting *Bianchi v. Bellingham Police Dep't*, 909 F.2d 1316, 1318 (9th Cir. 1990)). Subsequent, disjointed periods of re-incarceration, such as those which occur after multiple parole violations, cannot be "tacked" on to earlier periods of disability for purposes of tolling the statute of limitations in § 1983 cases. The disability of imprisonment ends as soon as a plaintiff is released from prison or jail.

### A. Claims 1 & 2: Conditions of Parole

Popescu alleges that he was subjected to "illegal, outrageous[,] and unconstitutional [p]arole [c]onditions [that] amounted to [c]ruel and [u]nusual punishment" and "were not related to the offense." He first claims that when he was released on parole on October 8, 2009, he signed off[3] on the parole conditions and

---

[3] There is ambiguity in the FAC about whether Plaintiff signed, or refused to sign, the parole conditions. At one point, Plaintiff claims that he signed them under "stress and duress," while at another point he claims that he refused to sign and was sentenced to six months in prison as a result. (*See* FAC at ¶¶ 15, 16.) In either case, the

specified that they were signed under duress. In particular, Popescu alleges that Parole Agent T.J. Ayala[4] imposed these conditions, refused to modify them, and forced him to parole to Indio, instead of his prior county of residence, San Diego.

Popescu's claim for relief for the allegedly unconstitutional parole conditions accrued on October 8, 2009, as he was aware on that date of the existence of circumstances that formed the basis of his § 1983 claim. He clearly knew, or should have known, that his rights had been violated (if violated at all) when he signed off on the parole conditions – in fact, he alleges that he noted on the document that he had signed "under stress and duress." Since he was not in prison at the time his cause of action accrued – he had just been released on parole at the time – there is no statutory tolling available for the disability of imprisonment. CAL. CODE CIV. PROC. § 357.

Therefore, Popescu had two years from October 8, 2009 to file his lawsuit against Agent Ayala. He did not file this action until March 11, 2013, approximately seventeen months too late.[5]

In his second claim, Popescu notes that the his conviction for stalking was reversed on January 11, 2010. He says that he wrote letters to defendants Davis, Benavides, Ayala, Saldana, Walker, and Ford. Despite the letters, none responded and he was kept in prison. He asserts that the lack of response subjected him to Eighth and Fourteenth Amendment violations. Claim 2 does not specify the dates on which he wrote to the defendants or the number of days he waited during their alleged inaction. However, in Claim 3 he describes being returned to the Superior

---

alleged injury occurs on the same day – October 8, 2009. As the only issue relevant for disposition in this case is the timing of the accrual of his cause of action, there is no need to resolve the ambiguity.

[4] Popescu also alleges that Benny Benavides, Parole Supervisor, was responsible for these conditions. However, Benavides remains unserved. (Doc. No. 31-1 at 1.)

[5] Even if tolling were allowed for Plaintiff's subsequent period of imprisonment, the statute would only be tolled until his next release, which was on May 11, 2010. In this case, he would have been required to file his lawsuit by May 11, 2012. His action would be still ten months too late.

1  Court for a hearing on March 30, 2010, after which he was eventually released from
2  custody on May 11, 2010.  Because he was released, his federal claim against the
3  parole officers for their alleged inaction and his continued incarceration accrued no
4  later than his release date of May 11, 2010.  The statute of limitations required his
5  claim be filed no later than two years later on May 11, 2012.  As mentioned before,
6  he did not file this action until March 11, 2013.
7       Like Claim 1, Claim 2 has been brought too late and is now barred by the
8  statute of limitations.  Accordingly, Claims 1 and 2 are dismissed with prejudice.

### B. Claims 3 & 4: False Imprisonment and Arrest

10       Popescu asserts claims of false imprisonment and arrest against a number of
11  defendants.  In particular, he alleges that San Diego County Sheriff William Gore
12  and Sheriff's Deputy C. DeSalme ignored a "[c]ourt [o]rder" and kept Popescu in
13  prison after April 7, 2010, the date he was scheduled to be released on parole.
14  Plaintiff is entitled to statutory tolling for 34 days, since he was imprisoned on the
15  date this claim accrued.  Because of tolling, the limitations period did not start until
16  May 11, 2010 – the date of his release.  *See* CAL. CODE CIV. PROC. § 357.
17  Unfortunately, the time for filing his lawsuit ended on May 11, 2012.  This action
18  was not filed until March 11, 2013, ten months too late.  Consequently, the statute of
19  limitations had run out before Plaintiff filed the instant lawsuit against Gore and
20  DeSalme.
21       Popescu next alleges that Parole Agent Louie Saldana illegally issued an
22  arrest warrant for Plaintiff on May 12, 2010, the day after he had been released from
23  R.J. Donovan Prison.  Apparently, Popescu went to San Diego, which was
24  presumably still a violation of his parole conditions.  While in San Diego, Plaintiff
25  was arrested by Agent Saldana.  At the time of this arrest, Plaintiff was released on
26  parole, so he is not entitled to tolling pursuant to CALIFORNIA CODE OF CIVIL
27  PROCEDURE § 357.  Even if he were entitled to statutory tolling, it would only toll
28  the limitations period until May 26, 2012, when he was again released.  The deadline

for filing his lawsuit was May 12, 2012 – or May 26, 2012 if the statute was tolled. Either way, the statute of limitations had run out for this claim because Plaintiff filed the instant lawsuit ten months too late.

Finally, Popescu alleges that he was once again wrongfully arrested: this time on May 27, 2010 at the Parole Office in Indio. Based on the allegations, Parole Officer Edward Galindo indicated to Plaintiff that he had not been officially notified that the stalking conviction had been reversed. Because of that, Popescu would still be required to parole to Indio. Plaintiff asked to speak to Parole Supervisor Sandra Walker. During their conversation, according to the Complaint, Walker became hysterical and ordered Parole Officer Ortiz to arrest Popescu. Popescu was arrested. Once he arrived at the prison, he was informed that he was being charged with four "false charges," which were: (1) refusal to sign parole conditions, (2) absconding, (3) challenging another to fight with clenched fists, and (4) resisting arrest. Plaintiff was on parole when he was arrested, but he was in custody when the alleged false charges were made.

For the part of the claim concerning his re-arrest on May 27, 2010, the statute of limitations ran out on May 27, 2012. The complaint was filed ten months late. Even if tolling were applied until the time of his subsequent release on December 24, 2010, his suit would still be three months too late. As all of Plaintiff's claims for false imprisonment or false arrest are barred by the statute of limitations, Claims 3 and 4 for false arrest and imprisonment are dismissed with prejudice.

### C. Claims 3 & 4: Excessive Force

Popescu also alleges in Claims 3 and 4 two incidents where officers used excessive force to arrest him.[6] According to the Complaint, the arrests occurred on

---

[6] Use of excessive force by an arresting officer on a convicted prisoner may violate the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). However, in order to state a claim under Section 1983, a plaintiff must show that the officer(s) applied force "maliciously and sadistically for the purpose of causing harm." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (finding that ignoring a prisoner's repeated pleas to

March 26, 2010 and May 27, 2010.  As Popescu was not imprisoned at the time he says excessive force was used, he is not entitled to any statutory tolling.  *See* CAL. CODE CIV. PROC. § 357.  The deadline to file these claims was March 26, 2012 and May 27, 2012, respectively.  And these claims, like the others, are too late.  Even tolling the limitations period for the subsequent periods of imprisonment, the deadlines would be extended only to May 27, 2012 and December 24, 2012, and the complaint would still be too late.  Therefore, the excessive force claims are also barred by the statute of limitations and Claims 3 and 4 are dismissed with prejudice.

### III.  CLAIMS 5, 6, 7 & 8:  STATE-LAW CLAIMS

Popescu asserts a number of claims based upon California state law in Claims 5 through 8.  However, since Claims 1 through 4 are being dismissed with prejudice because of the statute of limitations bar, there remains no federal law claims to support continued original federal jurisdiction.  Where all federal law claims are dismissed, federal courts usually decline to exercise jurisdiction over remaining state-law claims under Title 28 U.S.C. §1367.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) (in usual case where all federal claims eliminated before trial, factors point toward dismissing state-law claims).  "With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise.  A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 129 S. Ct. 1862, 1866 (2009) (citations omitted); *Fossen v. Blue Cross & Blue Shield of Montana*, 660 F.3d 1102, n.7 (9th Cir. 2011) (same).

In this case, there are reasons why retaining jurisdiction would be detrimental

---

remove handcuffs could constitute excessive force where the tightness of the cuffs causes the prisoner lasting pain or injury).  Finally, disrespectful and assaultive comments by arresting officers do not implicate Eighth Amendment protections.  *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996).

1  to Popescu's state-law claims. For example, Popescu named as a defendant the
2  California Department of Corrections and Rehabilitation, which is a suit against the
3  State of California. That defendant would be absolutely immune from suit in this
4  Court. The immunity flows from the Eleventh Amendment to the U.S. Constitution.
5  *Thornton v. Brown,* 724 F.3d 1255, 1258 (9th Cir. 2013) (under the Eleventh
6  Amendment, a state is absolutely immune from a suit for damages in a federal court
7  when brought by a citizen). Consequently, if this Court retained jurisdiction over
8  the state-law claims against the state defendant, the claims would be immediately
9  dismissed. The same is true for Popescu's state-law claims against defendant James
10 Davis, in his official capacity. Davis is named as the Chairman of the California
11 Board of Parole Hearings. If Popescu is suing Davis for money damages in his
12 official capacity, then Popescu's claims would be construed as against the State of
13 California and, once again, barred by Eleventh Amendment immunity. *Id.* Federal
14 law also grants parole officers imposing conditions of parole absolute immunity.
15 *Id.* at 1259 (absolute immunity bars claim for damages against parole officers for
16 imposing allegedly unconstitutional provisions).
17     These obstacles would be absent if Popescu brought his suit in state court.
18 Moreover, the state-law claims he asserts against other defendants appear to be
19 barred by California's statute of limitations. However, questions of the appropriate
20 limitations periods and whether, and to what effect, state principles of accrual and
21 tolling may apply to his state-law claims, might be favorably resolved by a state
22 court.
23     Therefore, the Court exercises its discretion and declines to retain
24 supplemental jurisdiction over Popescu's state-law claims.
25
26
27 **IV. CONCLUSION**
28     Claims 1, 2, 3 and 4 are barred by the statute of limitations and are dismissed

with prejudice.  The Court declines to exercise supplemental jurisdiction over the remaining state-law claims in Claims 5, 6, 7 and 8 and dismisses those claims without prejudice and without leave to amend.

    The Clerk of Court may close the file.

    IT IS SO ORDERED.

DATED: August 22, 2014

_____
Hon. Roger T. Benitez
United States District Judge